**HERMEL, INC., Plaintiff-Respondent,**

v.

**The WIG CHALET BOUTIQUE, INC.,
Defendant-Appellant.**

No. 9542.

Missouri Court of Appeals,
Springfield District.

Sept. 10, 1975.

George J. Donegan, John D. Eakes, Horace S. Haseltine, Springfield, for defendant-appellant.

Turner White, White, Dickey & Allemann, Springfield, for plaintiff-respondent.

HOGAN, Judge.

Plaintiff Hermel, Inc., owns and operates the Battlefield Mall in the city of Springfield, Missouri. The Battlefield Mall is described as a "fairly typical small regional shopping center enclosed." Defendant Wig Chalet Boutique, Inc., is one of plaintiff's tenants. Defendant sells wigs, falls, wiglets and hairpieces. Deeming its "exclusive" (the restrictive covenant in its lease) infringed, defendant has withheld its rent since November 1, 1971. Plaintiff brought this action to recover rent and other charges allegedly due. Upon trial without a jury in the Circuit Court of Greene County plaintiff had judgment and defendant has appealed.

The restrictive covenant in defendant's lease provides that plaintiff will not, during the term of defendant's lease, lease any unit of space to any other tenant "whose exclusive purpose would be" the sale of "wigs, falls, wiglets and hairpieces." The covenant is made "subject to the right heretofore granted" to specifically designated tenants, including "McCrory's . . . who may have the right to carry such items as an incidental part of their business." Plaintiff further agrees, "as to all other Leases made", that the tenants shall not make the sale of wigs, etc., a "substantial" part of their business. "Substantial" sales of defendant's type of merchandise means gross sales in excess of one-third of any tenant's total gross sales, and plaintiff covenants, as to all "future Tenants" to limit "substantial" sales by any competing tenant upon notice, and agrees that during the time any competing tenant's sale of wigs, etc., shall be "substantial", defendant's rent shall abate.

This controversy arose when defendant became aware that McCrory-McLellan-Green Stores, operators of "McCrory's" had

executed a "concession" agreement granting a firm known as Wig World of Missouri, Inc., a "non-exclusive license" to operate a complete wig department in McCrory-McLellan-Green Stores "per individual store orders" on a month-to-month basis. McCrory's basic lease gives it the right to operate a variety and/or junior department store in separate departments or concessions. Defendant's position, very broadly stated, is that the concession agreement is a "sublease" to a future tenant, that the sale of wigs and wig accessories was not "incidental" to McCrory's operation, and that because defendant's duty to pay rent was dependent upon plaintiff's protection of defendant's "exclusive", defendant was entitled to abate the rent.

A good deal of evidence was heard and a number of documents were introduced, but the decisive issues developed on trial were 1) whether or not the sale of wigs and wig accessories was "incidental" to McCrory's operation; and 2) whether or not McCrory's "concession" agreement with Wig World was a "sublease". In a concise memorandum the trial court found both issues against the defendant. We have reached the same conclusions by much the same route.

In this court the defendant has reminded us of our duty to review the case de novo under Rule 73.01, para. 3(a), V.A.M.R., and has sought a sweeping review of every facet of the controversy. A meticulously developed brief has been filed, and the cause has been argued. We have reviewed the record, examined the documents introduced and read the briefs, but we decline to restate the facts at length and consider the defendant's points in detail. The congestion of appellate dockets is disturbing and has given rise to many far-reaching proposals designed to expedite the consideration and disposition of appeals on their merits.[1] We undertake no general comment, but we do believe that ordinarily, prompt review and adjudication of the parties' rights are far more important than any detailed, carefully articulated statement of the court's *reasons* for its decision. There are also other factors to be considered. As our preceptors remind us:

> "The [appellate] court is neither a law school nor a debating society, and the opinion is no place for a legal monograph or the airing of personal views on general matters. . . . The burden of keeping abreast of the reported cases . . is becoming very great; appellate courts should not needlessly add to the burden by publishing lengthy opinions with relation to matters that are well settled and concerning which no lawyer of any ability entertains serious doubt."[2]

Upon its merits, this case involves neither a novel legal proposition nor any question of continuing legal interest. Conceding that the developers and occupants of shopping centers are confronted with many legal problems of topical interest, including the construction and operation of restrictive covenants,[3] it is not necessary in this case to construe the defendant's "exclusive" or to consider it at length for any purpose. Here, defendant had the burden to show that the sale of wigs and wig accessories was not "incidental" to McCrory's operation because it pleaded that matter in avoidance of its covenant to pay rent. Whether "incidental" is taken to mean a minor concomitant to McCrory's general operation or sales activity amounting to less than one-third of McCrory's gross sales is of no consequence, because defendant proved neither alternative. As for defendant's contention that

1. See, e. g., Whittaker, Differentiated Case Management in Appellate Courts, 56 Judicature 324 (1973); O'Connell, Streamlining Appellate Procedures, Id., 234.

2. J. Parker, Improving Appellate Procedure, 25 N.Y.U.L.Rev. 1, 12–13 (1950), in R. Leflar, Appellate Judicial Opinions 202 (1974).

3. See Eagle, Shopping Center Control: The Developer Beseiged [sic], 51 J.Urban L. 585, 592–599 (1974); Drafting Shopping Center Leases, 2 Real Prop., Prob. & Trust J. 222, 232–236 (1967), in Real Estate in Midcentury 318, 328–332 (1974).

McCrory's "concession agreement" is in reality a sublease, it is not "news", so to speak, that the construction of "leases" in department stores involves nice questions of doctrinal nomenclature,[4] but in this instance it is not necessary to characterize the agreement precisely; whether it constitutes an agreement for a species of joint venture, or creates a kind of license, or as Professor Powell insists, creates an easement, 3 R. Powell, Real Property § 430 (Rev. ed. 1974), the "concession" agreement is by no means a sublease.

Upon careful examination of the record and the briefs, we conclude that the judgment of the trial court is based on findings of fact which are not clearly erroneous, that no error of law appears, and that a fully articulated opinion would have no precedential value as far as the issues tendered are concerned. The judgment is therefore affirmed in all respects pursuant to Rule 84.-16, para. (b), V.A.M.R.

All concur except FLANIGAN, J., not participating because not a member of the court when the cause was submitted.

---

4.  See 1 American Law of Property § 3.5 (A. J. Casner ed. 1952).